**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **FIRST KOREAN BAPTIST CHURCH** | § | |
| **OF DALLAS D/B/A NEW SONG** | § | |
| **CHURCH,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | **(JURY)** |
| **AMTRUST NORTH AMERICA,** | § | |
| **FIRST NONPROFIT INSURANCE** | § | |
| **COMPANY,** | | |
| **Defendants.** | | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE:**

COMES NOW, First Korean Baptist Church of Dallas d/b/a New Song Church ("Plaintiff"), and file this *Plaintiff's Original Complaint*, complaining of AmTrust North America, ("AmTrust") and First Nonprofit Insurance Co., ("First Nonprofit") (referred to individually or at times herein referenced collectively as "Defendants"), and for cause of action, Plaintiff would respectfully show this Honorable Court the following:

## PARTIES

1.     Plaintiff **First Korean Baptist Church of Dallas d/b/a New Song Church** is a 501c Texas charitable entity in the business of religion located in Carrollton, Texas.

2.     Defendant **AmTrust North America** is a Third-Party Administer for First Nonprofit Insurance Company. AmTrust's is a foreign entity whose home office is located at 800 Superior Avenue E, 21st Floor, Cleveland, Ohio 44114 and because AmTrust is conducting insurance business in the State of Texas, it may be served with process by serving the Commissioner of

Insurance, Kent Sullivan, at 333 Guadalupe Street Austin, Texas 78701-3938

3.      Defendant **First Nonprofit Insurance Company** is a foreign insurance company that is conducting insurance business in the State of Texas and it may be served with service of process by serving Corporation Service Co., 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION

4.      This Court has jurisdiction based on diversity of citizenship of the parties under 28 U.S.C. § 1332 and the amount in controversy is within the jurisdictional limits of the Court.

## VENUE

5.      Venue is proper in the Eastern District of Texas, Sherman Division under 28 U.S.C. §1391(b)(2) because the Plaintiff's property and the occurrences made the basis of this Complaint, are located in and/or took place in Denton County, Texas, which is in this district.

## FACTS

6.      Plaintiff is the owner of a Commercial Insurance Policy (the "Policy"), issued by First Nonprofit to insure its church property located at 4220 Fairway Dr., Carrollton, Texas 75101 ("the Property").

7.      On June 6, 2018, a severe hailstorm and windstorm damaged the main church building, the chapel, and the office building. Plaintiff notified First Nonprofit and made a claim ("Claim") against the Policy on or about June 22, 2018. First Nonprofit and/or AmTrust, the third party adminstrator, assigned Engle Martin, an adjusting company, to investigate and adjust the Claim and damages. Engle Martin then assigned Larry Couvillion as the individual adjuster to assess and adjust the damages to the Property.

8.      Couvillon conducted a preliminary inspection of Plaintiff's damages on June 6, 2018. Couvillon recommended that First Nonprofit obtain an engineer and have a re-inspection. The

engineer hired for the re-inspection was Kevin Rogers of Rogers Forensic Consulting. The re-inspection occurred on July 17, 2018, and the engineer found hail dents to the metal HVACs but claimed that the TPO single-ply membrane roof system of the church building did not sustain any punctures, tears, or fractures. First Nonprofit did not calculate for any interior damages.

9.      The total damages found by the re-inspection was less than the deductible of $220,000. On August 20, 2018, Plaintiff received a letter from Mr. Allen Jones, the General Adjuster for AmTrust, that stated; "[b]ased on our investigation we find no hail damages to the TPO roof system. We did find minor cosmetic damages to the metal roof system sections of the roof."

10.     The engineer's estimate was woefully inadequate as was Couvillon's. The inadequacy of Engle Martin, and Couvillon's substandard inspection is evidenced by the fact that covered damages and necessary repairs were omitted from the inspection estimate. Couvillon's and Engle Martin's improper and outcome-oriented investigation coupled with First Nonprofit's and/or AmTrust's inadequate training of the adjusters, resulted in an inaccurate number of damage items considered to be covered under Plaintiff's Policy and which were all underestimated in value. First Nonprofit relied entirely on Couvillon's and Engle Martin's substandard investigation and estimate to deny Plaintiff's Claim. It was a misrepresentation of the damages that Plaintiff's Property has suffered.

11.     There is no question that the Policy between Plaintiff and First Nonprofit covered the damages to Plaintiff's Property; therefore, Plaintiff was and is entitled to receive all Policy benefits owed. These substandard investigations as reflected in Couvillon's and Engle Martin's inaccurate estimates, did not even meet the minimum standards of performance pursuant to industry standards in Sections 21.203 and 21.205 of the Texas Administrative Code, applicable law, or otherwise. *See* TEX. ADMIN. CODE §§21.203, 21.205.

12.     It is clear from these facts, that First Nonprofit and AmTrust, set out to deny and/or underpay properly covered damages. First Nonprofit and AmTrust, failed to provide full coverage for the damages sustained by Plaintiff and under-scoped and undervalued the damages that were allowed, thus denying adequate and sufficient payment to Plaintiff. To date, Plaintiff has yet to receive full payment under the Policy which has caused a delay in Plaintiff's ability to fully repair the church Property. Moreover, additional damages have occurred from the lack of repair. At this point, Plaintiff was left with little choice but to retain the services of the law firm whose attorney signatures appear below.

13.     Furthermore, Plaintiff alleges that Defendants First Nonprofit and AmTrust, failed to properly train, adequately supervise, and oversee Couvillon's handling of Plaintiff's Claim. As a result, Engle Martin and Couvillon failed to perform a thorough and reasonable investigation of Plaintiff's Claim. They failed to sufficiently inspect and document all damaged areas of Plaintiff's church buildings which resulted in improperly estimating the damages and repairs needed. The estimate by Couvillon is grossly deficient in scope and accordingly, Plaintiff's Claim was undervalued below the Policy's deductible.

14.     Compounding First Nonprofit's failure to adequately train and supervise its adjusters, First Nonprofit and AmTrust failed to adequately review the adjuster's estimates of Plaintiff's damages as well. Rather, First Nonprofit and AmTrust just blindly adopted and accepted the substandard inspections and estimates without question. In this regard, First Nonprofit intentionally chose and adopted a business model that provided for retaining few, if any, qualified adjusters and employees or retaining any qualified outside adjusters to perform First Nonprofit's non-delegable duties of investigating claims in accordance with applicable Texas law. Further, it is equally as clear, that First Nonprofit either had no procedures or had inadequate procedures to monitor or regularly audit

the work product of the adjusters and claim's personnel.

15.     By wrongfully denying proper payments to Plaintiff and wholly failing to properly handle Plaintiff's Claim, First Nonprofit and AmTrust breached the duty of good faith and fair dealing owed to Plaintiff as an insured in an insurance contract with First Nonprofit and administered by AmTrust. "Good faith and fair dealing" is defined as the degree and diligence which a man of ordinary care and prudence would exercise in the management of one's own business. *Arnold v. Nat'l Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). The concept of good faith and fair dealing is based in large part on the parties' special relationship formed from the parties' "unequal bargaining power." Insurers, like First Nonprofit, and administers like AmTrust, have the ability to more easily take advantage of policyholders like Plaintiff, due to an insurer's and their administrator's control over the evaluation, processing, and denial of claims. This unlevel playing field between an insurer and its policyholder further justifies the imposition of a common-law duty on insurers to deal fairly and in good faith with their policyholders which here, First Nonprofit and AmTrust breached in failing to deal fairly and in good faith with Plaintiff.

16.     First Nonprofit's and AmTrust's conduct was not only a breach of its common law duty to deal fairly and in good faith with Plaintiff based on this "special relationship" between the parties, but also constitutes a breach of the insurance contract between First Nonprofit and Plaintiff. Over a century ago, Justice Learned Hand wrote: "[a] contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911). The insurance Policy in effect between Plaintiff and First Nonprofit is a contract wherein the insurance company, First Nonprofit, offers to provide insurance coverage and services associated therewith in exchange for the policyholder's payment of annual premiums in consideration of the contract. Texas law

recognizes a cause of action for breach of contact. Pursuant to Texas law, either party to the contract can initiate legal action against the other party for violations of that contract that causes damages. A breach of contract claim is distinct and independent from a tort claim such as a breach of the duty of good faith and fair dealing or a violation of statutory or other extra-contractual claims. Tort and contract claims are separate and independent, yet they are factually interwoven, and the same evidence is often admissible on both types of claims in an insurance policy.

17.     First Nonprofit's conduct also constitutes the commission of a tort for its violation of the Texas Insurance Code. Here, in Texas, the vast majority of insurance policies, including First Nonprofit's Policy contract with Plaintiff, do not contain provisions to account for an insurance company's and/or its representatives' (potentially improper) tort acts or omissions undertaken through their handling of a claim. It cannot be denied that such conduct has a detrimental effect on policyholders, like Plaintiff here, when a claim is unnecessarily drawn out and then ends with a poor result. To account for such tort acts and omissions that fall outside the four-corners of the contract language (but nonetheless affect the claim and/or detrimentally harm the policyholder), the Texas Legislature specifically created and enacted the Texas Insurance Code to protect consumers and regulate insurance professionals, like First Nonprofit and its administrator, AmTrust. Chapters 541 and 542 of the Texas Insurance Code include duties and obligations that any person or entity engaged in the business of insurance in the State of Texas must follow. Those duties and obligations are wholly independent of those to which an insurer may be contractually responsible. Specifically, Chapter 541 of the Texas Insurance Code states that, "the purpose of this chapter is to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices." Chapters 541 and 542 of the

Texas Insurance Code describe various claims settlement practices, among extensive other rules and requirements that anyone conducting the business of insurance in the State of Texas must not engage in or undertake. Insurance policies in Texas, such as Plaintiff's Policy with First Nonprofit, which gives rise to a breach of contract claim, are silent as to these statutory provisions which give rise to a tort claim. These two bodies of law (contract and tort) are entirely independent areas of the law with independent issues, under independent bodies of law with unique causes of action and damages.

18.      First Nonprofit and AmTrust have committed a tort when they violated the Texas Insurance Code by misrepresenting to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. First Nonprofit and AmTrust have further committed a tort when it violated the Texas Insurance Code by initially undervaluing and under-scoping the damages Plaintiff incurred. First Nonprofit's and AmTrust's misrepresentations caused Plaintiff to suffer "actual damages" which, under the Insurance Code, are those recoverable at common law and which include benefit-of-the-bargain damages, commonly referred to as "policy benefits," which signify the difference of the value represented and the value received. First Nonprofit's and AmTrust's conduct as described above and herein, constitutes a violation of Section 541.060(a)(1) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(1).

19.      Policyholders, like Plaintiff, can recover actual damages which are the "policy benefits" for extra-contractual claims such as Chapter 541 violations under the Texas Insurance Code and for commission of other bad faith claims. Plaintiff, therefore, is entitled to recover policy benefits which are the actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id*.

20.     First Nonprofit and AmTrust also failed to make an attempt to settle Plaintiff's Claim in a fair manner, although they were aware of the liability to Plaintiff under the Policy. First Nonprofit's and AmTrust's conduct constitutes a violation of Section 541.060(a)(2)(A) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(2)(A). First Nonprofit's and AmTrust's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid initially, in full, by First Nonprofit and/or AmTrust, but were not. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

21.     In addition, First Nonprofit and AmTrust neither communicated that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did it provide any explanation for the failure to adequately settle Plaintiff's Claim. First Nonprofit's and AmTrust's conduct are a violation of Section 541.060(a)(3) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(3). First Nonprofit's and AmTrust's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid initially by First Nonprofit and AmTrust, in full. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

22.     Furthermore, First Nonprofit and AmTrust failed to affirm or deny coverage of Plaintiff's Claim within a reasonable time. Specifically, Plaintiff did not receive a timely indication of acceptance or rejection, regarding the full and entire Claim, in writing from First Nonprofit and/or AmTrust First Nonprofit's and AmTrust's conduct constitutes a violation of Section 541.060(a)(4) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(4). First Nonprofit's and AmTrust's conduct caused Plaintiff to lose Policy benefits to which it was

entitled, and which should have been paid initially by First Nonprofit and/or AmTrust, in full. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

23.     Finally, First Nonprofit and AmTrust refused to fully compensate Plaintiff under the terms of the Policy, and further failed to conduct a reasonable investigation. Specifically, First Nonprofit and AmTrust performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in an unfair and inequitable evaluation of Plaintiff's losses on the Property. First Nonprofit's and AmTrust's conduct constitutes a violation of Section 541.060(a)(7) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(7). Thus, First Nonprofit's and AmTrust's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid initially, in full, by First Nonprofit and AmTrust. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

24.     After receiving notice of Plaintiff's Claim, First Nonprofit and AmTrust failed to meet their obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's Claim, beginning an investigation of Plaintiff's Claim, and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's Claim. First Nonprofit's and AmTrust's conduct is a violation of Section 542.055 of the Texas Insurance Code Prompt Payment Claims Act. *See* TEX. INS. CODE §542.055. First Nonprofit's and AmTrust's conduct caused Plaintiff to suffer actual damages which constitutes the loss of Policy benefits to which it was entitled, and which should have been paid by First Nonprofit and AmTrust. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

25.     First Nonprofit and AmTrust failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. First Nonprofit's and Am-Trust's conduct constitutes a violation of Section 542.056 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.056. First Nonprofit's and AmTrust's conduct caused Plaintiff to suffer actual damages which constitutes the loss of Policy benefits to which it was entitled, and which should have been paid, in full, by First Nonprofit and AmTrust. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages for First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code. *Id.*

26.     First Nonprofit and AmTrust failed to meet their obligations under the Texas Insurance Code regarding payment of Plaintiff's Claim without delay. Specifically, First Nonprofit and AmTrust delayed full payment of Plaintiff's Claim longer than allowed, and, to date, Plaintiff has not received full payment of its Claim. First Nonprofit's and AmTrust's conduct constitutes a violation of Section 542.058 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.058. As a result of First Nonprofit's and AmTrust's violation of this section of the Texas Insurance Code, Plaintiff has lost Policy benefits to which it was entitled, and which should have been paid, in full, by First Nonprofit and/or AmTrust timely. Plaintiff, therefore, is entitled to recover Policy benefits as its actual damages for First Nonprofit's and/or AmTrust's violation of this section of the Texas Insurance Code. *Id.*

27.     Defendants First Nonprofit and AmTrust, and their agents Engle Martin, and Couvillon, misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence. Defendants First Nonprofit's and AmTrust's conduct constitutes a violation of Section 541.060(a)(1) of the Texas Insurance Code. *See* TEX. INS. CODE §541.060(a)(1).

28.    Defendants First Nonprofit and AmTrust, failed to make an attempt to settle Plaintiff's Claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. Defendants, conduct constitutes a violation of Section 541.060(a)(2)(A) of the Texas Insurance Code. *See* TEX. INS. CODE §541.060(a)(2)(A).

29.    Defendants First Nonprofit and AmTrust, failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Defendants, First Nonprofit and AmTrust, failed to offer Plaintiff adequate compensation, without any explanation of why full payment was not being made. Defendants First Nonprofit and AmTrust, did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's Claim. Defendants First Nonprofit's and AmTrust's, conduct is a violation of Section 541.060(a)(3) of the Texas Insurance Code. *See* TEX. INS. CODE §541.060(a)(3).

30.    Defendants First Nonprofit and AmTrust, failed to affirm or deny coverage of Plaintiff's Claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire Claim, in writing from Defendants. Defendants' conduct constitutes a violation of Section 541.060(a)(4) of the Texas Insurance Code. *See* TEX. INS. CODE §541.060(a)(4).

31.    Defendants, First Nonprofit and AmTrust, refused to fully compensate Plaintiff under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants First Nonprofit and AmTrust, performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. Defendants' conduct constitutes a violation of Section 541.060(a)(7) of the Texas Insurance Code. *See* TEX. INS. CODE §541.060(a)(7).

32.     From the time Plaintiff's Claim was presented to First Nonprofit and AmTrust, the liability

of First Nonprofit and/or AmTrust to pay the full claim in accordance with the terms of the Policy

was reasonably clear. However, First Nonprofit and/or AmTrust have refused to pay Plaintiff in

full, despite there being no basis whatsoever on which a reasonable insurance company and its

administrator would have relied to deny the full payment. First Nonprofit's and AmTrust's conduct

constitutes a breach of the common law duty of good faith and fair dealing.

33.     Defendants First Nonprofit and AmTrust, knowingly or recklessly made false

representations, as described above, as to material facts and/or knowingly concealed from Plaintiff

all or part of such material information.

34.     Because of Defendants First Nonprofit's and AmTrust's, wrongful acts and omissions,

Plaintiff was forced to retain the professional services of the attorneys and law firm who are

representing it with respect to these causes of action.

35.     Plaintiff's experience is not an isolated case. The acts and omissions of First Nonprofit and

AmTrust committed in this case, or similar acts and omissions, occur with such frequency that

they constitute a general business practice of First Nonprofit and AmTrust with regard to handling

these types of claims. First Nonprofit's and AmTrust's entire process is unfairly designed to reach

favorable outcomes for the company at the expense of the policyholders.

### CAUSES OF ACTION:

First Nonprofit is liable to Plaintiff for breach of contract, as well as violations of the Texas

Insurance Code, and breach of the common law duty of good faith and fair dealing.

### BREACH OF CONTRACT

36.     First Nonprofit's conduct constitutes a breach of the insurance contract made between First

Nonprofit and Plaintiff. First Nonprofit's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of First Nonprofit's insurance contract with Plaintiff.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

37.     First Nonprofit's and AmTrust's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE §541.060(a)-§541.060(a)(7). All violations under this article are made actionable by Section 541.151 of the Texas Insurance Code. *See* TEX. INS. CODE §541.151.

38.     First Nonprofit's and AmTrust's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, is a violation of Section 541.060(a)(1) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

39.     First Nonprofit's and AmTrust's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though First Nonprofit's liability under the Policy was reasonably clear, is a violation of Section 541.060(a)(2)(A) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

40.     First Nonprofit's and AmTrust's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the Claim, is a violation of Section 541.060(a)(3) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(3).

41.     First Nonprofit's and AmTrust's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiff, or to submit a reservation of rights to Plaintiff, is a violation of Section 541.060(a)(4) constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

42.     First Nonprofit's and AmTrust's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, is a violation of Section 541.060(a)(7) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE: THE PROMPT PAYMENT OF CLAIMS

43.     First Nonprofit's and AmTrust's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act. All violations made under this article are made actionable by Section 542.060 of the Texas Insurance Code. *See* TEX. INS. CODE §542.060.

44.     First Nonprofit's and AmTrust's delay of the payment of Plaintiff's Claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, is a violation of Section 542.058 and constitutes a non-prompt payment of the Claim. *See* TEX. INS. CODE §542.058.

## ACTS CONSTITUTING ACTING AS AGENT

45.     As referenced and described above, and with further such conduct throughout this litigation and lawsuit, AmTrust, are agents of First Nonprofit based on its acts and those of Engle Martin and Couvillon during the handling of this Claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. *See* TEX. INS. CODE §4001.051.

46.     First Nonprofit has elected to accept liability of Engle Martin & Associates and Couvillon's

conduct during the claims handling portion of Plaintiff's Claim under Texas Insurance Code Section § 542.006A.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

47.     Because an insurer like First Nonprofit and its administrator AmTrust, have the ability and more easily can take advantage of the insured due to an insurers and its administrator's exclusive control over the evaluation, processing and denial of claims, insurance companies and their administrators's and the insurance policies present an inherent "unequal bargaining power." In legal terms, this unlevel playing field results in a "special relationship" between an insurer and its administrator and an insured and further justifies the imposition of a common law duty on insurers to "deal fairly and in good faith with their insureds."

48.     First Nonprofit's and AmTrust's conduct however, as described herein, constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts. First Nonprofit and AmTrust failed to perform their contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, First Nonprofit and AmTrust refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Property and to restore it. Thus, from and after the time Plaintiff's Claim was presented to First Nonprofit and AmTrust, the liability of First Nonprofit and AmTrust to pay the full Claim in accordance with the terms of the Policy was reasonably clear and there was no basis upon which a reasonable insurer and/or administrator would have relied to deny the full payment.

49.     First Nonprofit's and AmTrust's failures, as described above, to adequately and reasonably investigate and evaluate Plaintiff's Claim, and to pay the full proceeds of the Policy, although, at that time, First Nonprofit and AmTrust knew or should have known by the exercise of reasonable

diligence that First Nonprofit's liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing. First Nonprofit's and AmTrust's conduct has caused Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid, in full, by First Nonprofit and/or AmTrust.

**UNFAIR SETTLEMENT PRACTICES**

50.     First Nonprofit and/or AmTrust assigned Engle Martin to investigate Plaintiff's Claim and subsequently, assigned Couvillon to individually adjust Plaintiff's Claim. Couvillon was improperly trained to handle claims of this nature and he performed an unreasonable investigation of Plaintiff's damages. Defendant AmTrust, and agents Engle Martin, and Couvillon, failed to properly assess Plaintiff's damages and the repairs needed which resulted in a grossly deficient scope and underpayment of Plaintiff's Claim. Defendant AmTrust, and agents Engle Martin, and Couvillon, also omitted covered damages from the reports, including many of Plaintiff's exterior damages. In addition to these omissions, the damages that were included in the estimates were severely underestimated.

51.     It is unclear as to why Defendant First Nonprofit and Defendant AmTrust, and their agents, Engle Martin and Couvillon, knowingly misrepresented the scope and details of Plaintiff's damages, and First Nonprofit's coverage of same. One fact is clear, and that is that First Nonprofit failed to not only properly train the adjusters but in addition, failed to thoroughly review and properly oversee the work of its assigned adjuster, Couvillon. Nevertheless, First Nonprofit and AmTrust, relied on Engle Martin's and Couvillon's estimates and assessments and ultimately approved an improper adjustment and an inadequate, unfair settlement of Plaintiff's Claim.

52.     Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendants'

misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages; (2) stating that Plaintiff's damages were less severe than they in fact were; (3) using the nature of the Property to manipulate Plaintiff's ability to attain Policy limits, despite accepted payments for the coverage afforded by a commercial policy; (4) failing to provide an adequate explanation for the inadequate compensation Plaintiff received; and (5) using incorrect ACV value instead of RCV as called for in the Policy. Defendants First Nonprofit's and AmTrust's unfair settlement practices, as described above and by the example given herein, of misrepresenting to Plaintiff material facts relating to the coverage at issue, is a violation of Section 541.060(a)(1) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

53.     Defendants First Nonprofit's and AmTrust's, unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though liability under the Policy was reasonably clear, is a violation of Section 541.060(a)(2(A) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

54.     Defendants First Nonprofit and AmTrust, failed to explain to Plaintiff the reasons for the offer of an inadequate settlement. Defendants Engle Martin, and Couvillon failed to offer Plaintiff adequate compensation without any explanation as to why full payment was not being made. Defendants AmTrust, Engle Martin, and Couvillon did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's Claim. The unfair settlement practices of Defendants AmTrust, Engle Martin, and Couvillon, as described

above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's Claim, is a violation of Section 541.060(a)(3) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(3).

55.     Defendant AmTrust's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiff, or to submit a reservation of rights to Plaintiff, is a violation of Section 541.060(a)(4) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

56.     Defendant AmTrust, and agents Engle Martin, and Couvillon, did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiff's exterior damages, although all damages were reported by Plaintiff to First Nonprofit. Thus, Defendant First Nonprofit and agents Engle Martin and Couvillon, conducted an outcome-oriented investigation of Plaintiff's Claim which investigation was unreasonable and is a violation of Section 541.060(a)(7) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

## KNOWLEDGE

57.     Each of the acts described above and herein, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## DAMAGES

58.     Plaintiff will show that all the acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

59.     As previously mentioned, the damages caused by this severe hail/windstorm have not all been properly addressed or repaired in the months since, causing further damages to the Property, and causing undue hardship and a burden to Plaintiff. These damages are a direct result of Defendants First Nonprofit and AmTrust, with the aid of their agents Engle Martin, and Couvillon's mishandling of Plaintiff's Claim in violation of the laws set forth above.

60.     For breach of contract, Plaintiff is entitled to regain the benefit of its bargain, for the purchase of the Policy and which is the amount of the Claim, together with attorney's fees under Section 38.001 of the Texas Civil Practices and Remedies Code. All conditions precedent to Plaintiff's Claims for relief have been performed or have occurred and/or First Nonprofit has waived the same.

61.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, court costs, interest, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times the actual damages under Section 541.152 of the Texas Insurance Code. *See* TEX. INS. CODE §541.152.

62.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims Act, Plaintiff is entitled to simple interest on the amount of its Claim as damages each year at the rate determined on the date of judgment, by adding five percent (5%) of the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. *See* TEX. INS. CODE §542.060.

63.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to

compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

64.    For the prosecution and collection of this Claim, Plaintiff has been compelled to engage the services of the attorneys whose names are subscribed to this pleading. Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals.

## JURY DEMAND

65.    Plaintiff requests a jury trial of all their causes of action alleged herein with a jury consisting of citizens residing in the Sherman Division of the Eastern District of Texas and Plaintiff is paying the appropriate jury fee with the filing of this petition.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate it in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for prejudgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

**Merlin Law Group, P.A.**

BY:     */s/ Rene M. Sigman*
        *Rene M. Sigman, Esq.
State Bar No. 24037492
rmsdocket@merlinlawgroup.com
J. Ryan Fowler, Esq.
State Bar No. 24058357
rmsdocket@merlinlawgroup.com
515 Post Oak Blvd, Suite 510
Houston, Texas 77027
(713) 626-8880 (Office)
(713) 626-8881 (Facsimile)

**\*LEAD ATTORNEY FOR PLAINTIFF
ATTORNEYS FOR PLAINTIFF**